IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RYAN DAVID WHITTINGTON,<br><br>Defendant. | Case No. 25-CR-257-JFH |

## OPINION AND ORDER

Before the Court are three (3) pleadings ripe for consideration: (1) a Notice of Intent to Introduce Res Gestae Evidence, or in the Alternative, Evidence Admissible Pursuant to Rule 404(b) ("Res Gestae Notice") [Dkt. No. 24] filed by the United States of America ("Government"); (2) a Notice of Intent to Introduce Res Gestae Evidence in Support of his Affirmative Defense(s) ("Res Gestae Notice") [Dkt. No. 25][1] filed by Defendant Ryan Whittington ("Defendant"); and (3) a Motion in Limine to Include the Victim's Alcohol-Related Criminal Conduct ("Motion in Limine") [Dkt. No. 26] filed by Defendant. Defendant did not object or otherwise respond to the Government's Res Gestae Notice. The Government filed responses in opposition to both Defendant's Res Gestae Notice and Defendant's Motion in Limine. Dkt. Nos. 28, 29. The Court will consider the Notices and the Motion in Limine below.

---

[1] Pursuant to the Court's Scheduling Order, notices were to be filed by October 2, 2025. Dkt. No. 22. Defendant's Res Gestae Notice [Dkt. No. 25] was filed on October 9, 2025, out of time. However, due to the Court's preference for resolving matters substantively, the Court will consider and rule on the merits of Defendant's Res Gestae Notice.

## BACKGROUND

### I. Procedural Background

On July 21, 2025, Defendant was charged by indictment with one count of Assault Resulting in Serious Bodily Injury in Indian Country. Dkt. No. 2. Specifically, it is alleged that on November 24, 2024, Defendant, an Indian, assaulted J.M., within Indian Country in the Northern District of Oklahoma, resulting in serious bodily injury. *Id*. This case is set for jury trial on the Court's November 17, 2025 docket. Dkt. No. 20.

### II. Factual Background

#### A. Charged Conduct

In November of 2024, an officer with the Bartlesville Police Department responded to the report of an assault victim, J.M., at the Jane Phillips Hospital in Bartlesville, Oklahoma. Dkt. No. 24 at 1. The officer noticed several visible injuries to J.M., including a swollen face, swollen eye, swollen lips, dried blood in and around her nose, and a visible "dent" on the bridge of her nose. *Id*. at 1-2. Additionally, the officer observed bruising surrounding J.M.'s left ear, and numerous bruises, scrapes, and cuts on her wrists, arms, and elbows. *Id*. at 2. J.M. was diagnosed with a concussion, right foot fracture, multiple facial fractures, and underwent reconstructive surgery for an "open repair of right orbital floor blowout fractural with medpor plate." *Id*.

J.M. reported to the officer that three (3) days prior, she had moved back in with Defendant, her ex-boyfriend and the father of her daughter, in Sand Springs, Oklahoma. Dkt. No. 24 at 2. J.M. stated that around 3:00 a.m., she and Defendant got into an argument and Defendant began beating her. *Id*. J.M. reported that she begged Defendant to stop, and that she remembered "blood pouring down her face" before she lost consciousness. *Id*. Upon regaining consciousness, J.M. left Defendant's house in Sand Springs and drove to her mother's home in Bartlesville, and then

her mother drove her to the Jane Phillips Hospital. *Id*. The officer documented J.M.'s statement and injuries, but instructed her that since the incident occurred in Sand Springs, she would need to report the incident to the Sand Springs Police Department. Dkt. No. 24 at 2. J.M. did not report the incident to the Sand Springs Police Department for over a month. *Id*.

In a follow-up interview, J.M. stated that the argument with Defendant had been about his cheating. *Id*. J.M. reported that she attempted to leave his residence, but Defendant pulled her out of her car. *Id*. J.M. responded by hitting Defendant "a few times." Dkt. No. 24 at 2. Defendant then began punching J.M. and dragged her into the garage. *Id*. This is where J.M. says she became unconscious. *Id*. J.M. said that she delayed reporting the incident to the Sand Springs Police Department because she was "hoping [Defendant] would change." *Id*. at 3.

**B.    Other Conduct**

    **1.    Defendant**

Six (6) months prior to the charged conduct, officers with the Sand Springs Police Department responded to a domestic disturbance at Defendant's residence. Dkt. No. 24 at 3. Officers met with Defendant and J.M., and noticed multiple injuries on J.M.'s face, throat, head, arms, and legs. *Id*. J.M. reported that she had attempted to leave Defendant's residence, but he would not let her, pushing her down to the concrete driveway and "smashing" her head into the ground twice. *Id*.

As a result of this assault, Defendant was charged and pled guilty to one count of Domestic Abuse in Muscogee (Creek) Nation Case No. CM-2024-484. Dkt. No. 24 at 3. Defendant was sentenced to a one (1) year deferred sentence, one (1) year of supervised release, a fine and court costs, participation in a batterer's intervention program, and was ordered to have no contact with J.M. except as allowed by DHS. *Id*.

2. **J.M.**

   a. **J.M.'s History of Domestic Violence**

In August of 2023, officers with the Tulsa Police Department responded to an incident involving J.M. and Defendant. Dkt. Nos. 25 at 1-2; 25-1. Defendant reported he and J.M. had been drinking, when they got into an argument. Dkt. No. 25-1 at 2. Defendant stated that J.M. "sucker punched" him, hit him in the face with both open and closed fists, and grabbed him around the neck and choked him almost to unconsciousness. *Id*. Officers observed that Defendant had a swollen and bruised right eye, as well as bloody, raised abrasions on both sides of his neck. *Id*. Officers arrested J.M. for Domestic Violence/Strangulation, and she was charged by the Tulsa District Attorney's Office with Felony Domestic Assault and Battery in Tulsa County Case No. CF-2023-2886. Dkt. Nos. 25-1 at 2; 25 at 2. The case was ultimately dismissed at the prosecutor's discretion. Dkt. No. 25 at 2.

In March of 2024, Defendant and J.M. had a verbal altercation. Dkt. No. 25 at 2. The details surrounding the argument are unclear, but it appears that J.M. later arrived at Defendant's location with another man, Levi Burruss. *Id*. It is Defendant's belief that Burruss and J.M. were lovers and conspired together for Burruss, who is trained in Brazilian Jiu-Jitsu, to attack Defendant. *Id*. at 2-3. When J.M. and Burruss arrived to Defendant's location, Burruss beat Defendant unconscious, and he was rushed to the hospital. *Id*. at 3. At the hospital, Defendant was put into a coma and intubated. Dkt. No. 25 at 3. Defendant's medical record indicates that his condition was severe and that he suffered several facial fractures, a hemorrhage and injury to his optic nerve, and extensive tissue swelling. *Id*. Defendant believes that Burruss' attack on Defendant was at the direction of J.M. *Id*.

4

### b. J.M.'s History of Alcohol-Related Criminal Conduct

J.M. has had six (6) driving under the influence charges, three (3) of which occurred in 2024, the same year as the charged conduct in this case. Dkt. No. 26 at 1. J.M. was also convicted of Aggravated Driving Under the Influence in Cleveland County Case No. CF-2013-1761.[2] *Id*.

## ANALYSIS

### I. The Government's Res Gestae Notice [Dkt. No. 24]

At trial, the Government intends to introduce Defendant's prior instance of domestic violence involving J.M., including his Domestic Abuse conviction in Muscogee (Creek) Nation Case No. CM-2024-484. The Government argues that this evidence is admissible as res gestae, or intrinsic, evidence, or is otherwise admissible under Rule 404(b) to establish Defendant's motive and intent to commit the charged crime.

Rule 404(b) provides, in pertinent part:

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> …
>
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b). Courts in the Tenth Circuit begin a Rule 404(b) analysis with a determination of whether the relevant evidence is intrinsic or extrinsic to the charged conduct, as Rule 404(b) does not apply to intrinsic evidence. *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011)). Evidence is considered

---

[2] Defendant's Motion in Limine states that this is an Oklahoma County case. Dkt. No. 26 at 1. That is incorrect. The Court has confirmed that the correct case is Cleveland County Case No. CF-2013-1761.

"intrinsic" when it is inextricably intertwined with the charged conduct, meaning it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury;" contrastingly, evidence is "extrinsic" when it "is extraneous and is not connected or blended with the factual circumstances of the charged offense." *Id.* (quoting *United States v. Parker,* 553 F.3d 1309, 1314 (10th Cir. 2009)). The Tenth Circuit has held that evidence can be intrinsic even if it occurred over a period of several years prior to the charged offense. *See United States v. Collins*, 97 Fed. App'x 818, 823-34 (10th Cir. 2004) (unpublished); *see also United States v. Nieto Regalado*, 19-CR-0114-CVE, 2019 WL 5783730, at *11 (N.D. Okla. Nov. 6, 2019) (holding prior acts that occurred two years prior to indicted conduct were intrinsic). Intrinsic evidence "should be approached with caution." *Collins*, 97 Fed. App'x at 824 n.7.

If the Court determines evidence is intrinsic, Rule 404(b) does not apply. However, the evidence "remains subject to the requirement of FRE 403 that its probative value is not substantially outweighed by the danger of unfair prejudice." *Irving*, 665 F.3d at 1212. If the Court determines the evidence at issue is not intrinsic, the Rule 404(b) analysis continues and the Court must consider four factors: (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) whether the probative value of the evidence is substantially outweighed by the prejudicial effect, and (4) the availability of a limiting instruction. *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

The Government first argues that evidence of this prior instance of abuse constitutes res gestae evidence because evidence of the prior assault is inextricably intertwined with the evidence of the charged conduct. Dkt. No. 24 at 4. Specifically, the Government notes that evidence of Defendant's earlier abuse is noted throughout the evidence and investigation of the charged

conduct. Because the prior instance occurred six (6) months prior to the charged conduct, J.M. had lingering injuries from the previous instance, which she distinguished from injuries received in the changed conduct to both law enforcement and medical personnel during the investigation of the charged conduct. *Id*. For this reason, the Government argues that a presentation of the evidence in this case would be incomplete without evidence of Defendant's earlier abuse. *Id*. at 5. The Government also argues that Defendant's earlier abuse helps to explain why J.M. delayed reporting the charged conduct to the Sand Springs Police Department. *Id*. at 4-5. For this reason, the Government argues that this evidence is necessary in order to tell a complete story of the charged conduct at trial.

  The Court does not find that the prior instance constitutes res gestae evidence. While evidence of prior domestic abuse may provide the jury with context regarding the relationship between Defendant and J.M., it remains unclear how this prior incident is directly connected to the factual circumstances of the charged conduct. Because the prior abuse consists of a single incident occurring six (6) months prior to the charged conduct, it does not demonstrate an escalation of conduct or overlapping circumstances leading up to the charged conduct. While J.M. may have had some lingering injuries from the prior assault which she had to distinguish from injuries received during the charged conduct, the Court finds that this can easily be omitted and redacted without creating confusion for the jury or an incomplete presentation of the evidence. The Court is also not convinced that evidence of the prior instance would provide any explanation as to why J.M. delayed reporting the charged conduct. Specifically, fear of Defendant or hoping that he may change can be explained without evidence of the prior instance. Because the Court finds that this evidence is not intrinsic to the charged crime, the Court will review its admissibility under Rule 404(b) pursuant to *Huddleston*.

Alternatively, the Government argues that the prior instance of abuse is admissible under Rule 404(b) to prove Defendant's motive and intent to commit the charged crime. Defendant is charged with Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 1151, 1153, and 113(a)(6). Dkt. No. 2. The Tenth Circuit has held that assault resulting in serious bodily injury is a general intent crime. *United States v. Zunie*, 444 F.3d 1230,1233 (10th Cir. 2006) (citing *United States v. Benally*, 146 F.3d 1232, 1237 (10th Cir. 1998)). Where intent is an essential element of the crime charged, it is a proper purpose under Fed. R. Evid. 404(b). *See e.g., United States v. Shumway*, 112 F.3d 1413, 1421 (10th Cir.1997). The Court thus finds intent is a proper purpose in the present case.

Although motive is not an element of the charged offense, it still provides an explanation that would make the Government's theory of the case more plausible or understandable and, therefore, the Court also finds that motive is a proper purpose in the present case. *See United States v. Santistevan*, 39 F.3d 250, 255 n.7 (10th Cir.1994) (noting that while motive "unlike mens rea, is not an essential element of a criminal offense," it "is an explanation that may tend to make a party's theory of the case seem more plausible or understandable"). Therefore, the Court also finds that motive is a proper purpose in this case.

The second *Huddleston* factor requires the evidence be relevant under Rule 401. Evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. However, where the relevance of the prior act depends on a defendant acting in conformity with a character trait, it is not properly admissible. *United States v. Commanche*, 577 F.3d 1261, 168-69 (10th Cir. 2009). This is especially true where the defendant has asserted that he was acting in self-defense. *Id*. (holding that where defendant asserts self-defense, evidence of a prior assault is

immaterial to a separate incident of assault except to suggest conformity with the conduct in the prior assault). Defendant has indicated that he is asserting the affirmative defense of self-defense. As the Court has previously found, the prior assault was a separate, distinct incident from the charged conduct and, therefore, its only relevance likely depends on a finding that Defendant acted in conformity with the prior incident. This is exactly the kind of propensity inference Rule 404(b) is designed to prevent. For these reasons, the Court's inquiry stops here and the Court finds that the evidence described in the Government's Res Gestae Notice [Dkt. No. 24] is INADMISSIBLE.

## II.  Defendant's Res Gestae Notice [Dkt. No. 25]

At trial, Defendant intends to introduce evidence of J.M.'s prior instances of violence toward Defendant. Dkt. No. 25 at 1. Specifically, Defendant seeks to introduce two incidents: (1) J.M.'s assault of Defendant in August of 2023; and (2) Burruss' assault of Defendant in March of 2024, which Defendant believes was at the direction of J.M. *Id*. at 1-3. Defendant indicates that he intends to assert the affirmative defenses of self-defense, lack of intent, and duress at trial and that these prior instances are necessary for the presentation of his defense. *Id*. at 5. Defendant further argues that these instances are inextricably intertwined with the charged conduct. *Id*.

The Court interprets Defendant's Res Gestae Notice as seeking to introduce the described evidence by reverse 404(b). Reverse 404(b) allows evidence of a non-defendant witness' bad acts "for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him." *United States v. Montelongo*, 420 F.3d 1169, 1174 (10th Cir. 2005) (quoting *Augshi v. Duerr*, 196 F.3d 754, 760 (7th Cir. 1999)). "[A]dmissibility of reverse 404(b) evidence depends on a 'straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues.'" *Id.* (quoting *United States v. Stevens*, 935 F.2d 1380, 1404-05 (3d Cir. 1991)).

While evidence of J.M.'s previous acts of violence against Defendant tends to negate Defendant's guilt of the charged crime in that it seems to support his theory of self-defense, the same issue discussed above prevents the admissibility of this evidence. Specifically, the relevance of the prior act depends on J.M. acting in conformity with a character trait. In other words, the probative value of this evidence rests entirely on a finding that J.M. acted violently during the charged conduct because she acted violently in the prior conduct. Furthermore, the Court finds that evidence of the attack involving Burruss would most certainly unduly waste time and confuse the issues for the jury. Burruss is an unrelated, third party, and while Defendant believes Burruss attacked him at the direction of J.M., this belief is merely speculative. For these reasons, the Court finds the probative value of the described evidence to be minimal and, weighed against the other considerations, this evidence fails reverse 404(b). Accordingly, the evidence described in Defendant's Res Gestae Notice [Dkt. No. 25] is INADMISSIBLE.

The Court will also address the affirmative defenses as set forth in Defendant's Res Gestae Notice. As the Government takes no issue with Defendant's notice of self-defense, the Court will not address this affirmative defense. Regarding lack of intent, while it is not technically an affirmative defense, it may function as a defense in that Defendant may negate the Government's showing of intent. Defendant is certainly permitted to do so in the presentation of his defense.

Regarding the affirmative defense of duress, the Court agrees with the Government that Defendant has not offered any evidence in support of a duress defense. A defendant does not have an absolute right to present a duress defense to the jury and the district court must act as gatekeeper in allowing the presentation of such a defense. *United States v. Arias-Quijada*, 926 F.3d 1257, 1259-1260 (10th Cir. 2019) (citing *United States v. Portillo-Vega*, 478 F.3d 1194, 1201 (10th Cir. 2007)). To be entitled to present a duress defense to the jury, Defendant must proffer legally

sufficient evidence as to each element of duress. *Id*. A duress defense requires the establishment of three elements: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." *Id*. at 1260 (citing *Portillo-Vega*, 478 F.3d at 1197). As Defendant has failed to present any evidence in support of his duress defense, the Court will allow Defendant seven (7) days from the entry of this Order to file a pretrial evidentiary proffer for the Court's consideration.

### III.    Defendant's Motion in Limine

Defendant's Motion in Limine seeks a ruling on the admissibility of J.M.'s prior alcohol-related criminal conduct, including a previous Aggravated Driving Under the Influence conviction. Dkt. No. 26. Defendant argues that this evidence will not be introduced for purposes of demonstrating J.M.'s character, but rather will be introduced on cross-examination for purposes of "speak[ing] to the credibility of [J.M.] as it relates to Defendant's Affirmative Defenses." *Id*. at 1. Specifically, Defendant states that he will use J.M.'s prior alcohol abuse to rebut any denial by J.M. that she started the fight which preceded the charged conduct, asserting that she would be unable to remember who started the fight "because she was heavily intoxicated" and that her history of alcohol abuse would impact her memory. *Id*. at 2-3. Further, Defendant asserts that "a common, well-known side effect of alcohol use is a propensity to violence." *Id*. at 2.

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) aff'd, 402 F. App'x 337 (10th Cir. 2010) (quotation and citation omitted). In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the

proper context. *Id*. A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible [or admissible] on all potential grounds." *Tulsa Zoo Mgmt., Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citation and quotation omitted).

Fed. R. Evid. 608(b) provides that a witness may not be impeached by inquiring into specific acts of misconduct not resulting in a conviction. However, the trial court has discretion to permit a witness to be cross-examined on specific instances of conduct probative of a witness' character for truthfulness or untruthfulness. *Id*.,; *see also* Fed. R. Evid. 611(b). The probative value of the proffered evidence is judged by its relevancy to the issues of the case. Fed. R. Evid. 401. The determination of whether the evidence is relevant is within the sound discretion of the trial court. *Young v. Anderson*, 513 F.2d 969, 973 (10th Cir. 1975). Even if it is determined to be relevant, the trial court must balance the probative value of the evidence against its potential prejudicial effect, and may exclude otherwise admissible evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

The Court agrees that J.M.'s alcohol use at the time of the charged conduct is relevant to her testimony regarding the charged conduct because her alcohol use and the effect it has had on her memory is admissible to attack her ability to perceive and recall the events about which she will testify. Therefore, Defendant may question J.M. on cross-examination as to her alcohol use at the time of the charged conduct. However, Defendant will not be permitted to question J.M. on prior instances of alcohol use or abuse. J.M.'s previous conduct involving alcohol, without more, would not have any probative value on her character for truthfulness or untruthfulness under the circumstances of this case. Additionally, evidence of J.M.'s prior alcohol-related conduct to suggest "a propensity to violence" is strictly prohibited by Fed. R. Evid. 404(b)(1). For these

reasons, Defendant will not be permitted to cross-examine J.M. regarding her prior alcohol-related conduct.

Under Fed. R. Evid. 609, a party may attack a witness' character for truthfulness by introducing evidence of a felony conviction if the probative value of the evidence outweighs its prejudicial effect. Fed. R. Evid. 609(a). Defendant offers that J.M. was convicted in 2016 on one felony count of Aggravated Driving Under the Influence. In weighing the probative value of this evidence against the prejudicial value, the Court first finds that the crime of driving under the influence has little impeachment value because it does not involve dishonesty or false statement. Further, the conviction occurred nearly ten (10) years ago and apparently J.M. has had no subsequent felony convictions. The Court recognizes, however, that credibility will certainly be at issue at trial as J.M. and Defendant are the only witnesses to the charged conduct. The prejudicial effect is slight. A DUI conviction, while serious, does not typically evoke the type of emotional response in the jury that other types of convictions might. Due to the centrality of credibility in this case, the Court finds that the probative value outweighs the prejudicial effect and Defendant will be permitted to impeach J.M. on cross-examination with evidence of her 2016 Aggravated Driving Under the Influence conviction. To be clear, evidence of J.M.'s prior conviction will be permitted only for the limited purpose of impeachment.

For the above stated reasons, the Defendant's Motion in Limine [Dkt. No. 26] is GRANTED IN PART AND DENIED IN PART as set forth in this Order.

## CONCLUSION

IT IS THEREFORE ORDERED that the evidence described in the Government's Notice of Intent to Introduce Res Gestae Evidence, or in the Alternative, Evidence Admissible Pursuant to Rule 404(b) [Dkt. No. 24] is INADMISSIBLE.

IT IS FURTHER ORDERED that the evidence described in Defendant's Notice of Intent to Introduce Res Gestae Evidence in Support of his Affirmative Defense(s) [Dkt. No. 25] is INADMISSIBLE.

IT IS FURTHER ORDERED that Defendant is granted leave to file an evidentiary proffer as to a duress defense within seven (7) days of the entry of this ORDER

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Include the Victim's Alcohol-Related Criminal Conduct ("Motion in Limine") [Dkt. No. 26] is GRANTED IN PART AND DENIED IN PART as set forth in this Order.

Dated this 24th day of October 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE